IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. _____ |
| | : | |
| v. | : | Violation: |
| | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| **RICKY J. MOTLEY,** | : | |
| | : | Forfeiture: |
| | : | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | : | 28 U.S.C. § 2461(c); and |
| | : | 21 U.S.C. § 853(p) |
| | : | |

**INFORMATION**

The United States Attorney charges that:

COUNT ONE-CONSPIRACY

At various times relevant to this Information:

Introduction

1.  At all relevant times, Ricky J. Motley (the "Defendant") was a Department of State ("DOS") employee. At all relevant times the Defendant worked in the DOS Defensive Equipment and Armored Vehicle Division. The Defendant was responsible for the acquisition, repair, and maintenance of armored vehicles for DOS. The Defendant was also involved in record-keeping with respect to DOS armored vehicles.

2.  At all relevant times, James Ratcliffe ("Ratcliffe") was a manager of the Car Collision Center, LLC (the "Collision Center") located in Springfield, VA. Prior to 2010, Ratcliffe was an owner of the Collision Center. Ratcliffe also operated as a sole proprietor under the name of Collector's Auto Restoration ("Collector's Auto"), which originally was co-located with the

Collision Center, but has been located in Fredericksburg, VA since 2012. Ratcliffe has managed the Collision Center and Collector's Auto for approximately thirty-two years.

3. Person A owns the Collision Center, and has worked for and managed certain aspects of the Collision Center's business throughout its existence.

4. Ratcliffe and Person A maintain a license to sell automobiles in Virginia. The license is in the name of Collector's Auto.

5. Through the Collision Center, Ratcliffe and others performed work on vehicles for government agencies, including DOS.

6. The Defendant was one of the DOS employees who frequently brought or sent armored vehicles to the Collision Center for work or repairs on the vehicles. Most often, these vehicles were Chevrolet Suburbans. Ratcliffe and Person A dealt with the Defendant frequently regarding DOS vehicles and related matters.

The Conspiracy and Its Objects

7. From at least 2011, to March 2016 in the District of Columbia and elsewhere, the Defendant,

**RICKY J. MOTLEY**

and others unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed with one another and with others to commit offenses against the United States, that is, to (a) steal and knowingly convert to their own use or the use of another, and without authority sell, convey or dispose of property having a value of more than $1,000, that is, tires, wheels, and vehicles, of the United States and DOS, in violation of Title 18, United States Code, Section 641, and (b) knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting so to do, did cause to be sent and delivered interstate wire communications, in violation of Title 18, United States Code, Section 1343.

## Goal of the Conspiracy

8. The goal of the conspiracy was for the Defendant, Ratcliffe, and others to enrich themselves by engaging in a conspiracy and a scheme to defraud in which they obtained property of the United States, and an agency thereof, by means of theft and by false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Conspiracy

9. The Defendant, Ratcliffe, and others used the following manner and means, among others, to accomplish the objects and goal of the conspiracy:

   a. Ratcliffe and Person A maintained a Virginia automobile dealer's license in the name of Collector's Auto, despite conducting few legitimate sales of vehicles from at least 2011 to present.

   b. Ratcliffe and the Defendant agreed that the Defendant would direct DOS property, including tires, wheels and vehicles to Ratcliffe for the purpose of Ratcliffe selling them.

   c. With regard to such DOS vehicles, Ratcliffe took steps to store and conceal the DOS vehicles until such time as they could be sold. When necessary, Ratcliffe drove unregistered or untitled DOS Suburbans using Ratcliffe's Virginia automobile dealership license plate.

   d. Ratcliffe obtained titles for DOS vehicles in his business' name, falsely claiming to the State of Virginia that he and his business legitimately owned the vehicles.

e.  Ratcliffe sought buyers for the DOS tires, wheels, and vehicles, and sold them. The Defendant and Ratcliffe agreed that Ratcliffe would keep the full proceeds of the sales of the tires and wheels, and share the proceeds of the vehicle sales.

f.  Ratcliffe concealed the source of the vehicles, and falsely told customers and others that he obtained them through legitimate means, such as automobile auctions.

## OVERT ACTS

10.  Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the Defendant, Ratcliffe, and others committed the following overt acts, among others:

a.  On at least two occasions from 2011 to 2012, the Defendant directed tractor-trailer loads of DOS tires and wheels to the Collision Center.

b.  On each of those occasions, Ratcliffe and others sold the tires and wheels to local individuals and businesses.

c.  Ratcliffe kept the proceeds of his tire and wheel sales, which was at least $7,500.

d.  Between in or before June 2011, and in or after November 2013, the Defendant and Ratcliffe misappropriated the following DOS vehicles, which were subsequently sold by Ratcliffe and others acting at Ratcliffe's direction, on the dates and for the prices indicated below:

4

| Sale # | Date of Sale | Price | VIN | Year | Make | Model | Mileage |
|---|---|---|---|---|---|---|---|
| 1 | 6/4/2011 | 8,000 | XXXXXXXXXXXXX3026 | 2004 | Hummer | H2 | 2175 |
| 2 | 9/7/2011 | 40,000 | XXXXXXXXXXXXX6579 | 2011 | Chevrolet | SUV | 51 |
| 3 | 9/23/2011 | 37,000 | XXXXXXXXXXXXX5456 | 2011 | Chevrolet | K2500 Suburban LT | Less than 100 |
| 4 | 12/12/2011 | 20,000 | XXXXXXXXXXXXX5875 | 2006 | Chevrolet | K2500 Suburban LT | 135 or less |
| 5 | 3/20/2012 | 15,295 | XXXXXXXXXXXXX 2639 | 2009 | Chevrolet | K1500 Suburban LS | 581 |
| 6 | 3/26/2012 | 27,000 | XXXXXXXXXXXXX0567 | 2009 | Chevrolet | K1500 Suburban LS | 149 |
| 7 | 5/23/2012 | 28,225 | XXXXXXXXXXXXX0241 | 2009 | Chevrolet | K2500 Suburban LT | 2591 |
| 8 | 11/27/2012 | 35,000 | XXXXXXXXXXXXX4688 | 2012 | Chevrolet | K2500 Suburban LT | 253 |
| 9 | 12/12/2012 | 43,000 | XXXXXXXXXXXXX1791 | 2012 | Chevrolet | K2500 Suburban LT | 50 |
| 10 | 1/10/2013 | 42,000 | XXXXXXXXXXXXX5416 | 2012 | Chevrolet | K2500 Suburban LT | 3562 |
| 11 | 6/21/2013 | 38,000 | XXXXXXXXXXXXX3323 | 2012 | Chevrolet | K2500 Suburban LT | 50 |
| 12 | 10/4/2013 | 38,000 | XXXXXXXXXXXXX4896 | 2012 | Chevrolet | K2500 Suburban LT | 9848 |
| 13 | 11/20/2013 | 37,000 | XXXXXXXXXXXXX3562 | 2012 | Chevrolet | K2500 Suburban LT | 7800 |

   e. Ratcliffe obtained a total of $408,520 by selling the above vehicles.

   f. The Defendant asked Ratcliffe to pay him a portion of the proceeds of these sales.

   g. The Defendant asked Ratcliffe to pay him his portion of the proceeds in cash, except that on occasion, the Defendant and Ratcliffe agreed that the Defendant would be paid with certain vehicles.

   h. Ratcliffe paid the Defendant cash and vehicles as kickbacks for the misappropriated DOS vehicles Ratcliffe sold.

   i. Ratcliffe concealed the origin of the vehicles discussed above by falsely telling buyers that Ratcliffe had obtained these items through legitimate means, such as at automobile auctions.

j. With regard to vehicles 1-3, 5-6, and 8-13 on the above chart, the buyers paid Ratcliffe by check. Ratcliffe then deposited those checks at his bank in Alexandria, VA. The evening of each such deposit, Ratcliffe's bank sent interstate wire transmissions to the Federal Reserve to clear the checks. Those wire transmissions traveled from Alexandria, VA, to Federal Reserve processing centers located in New Jersey and Texas.

k. In or around 2015 the Defendant misappropriated two essentially unused 2013 Suburbans, which had been part of a DOS order for new armored Suburbans. One of these Suburbans was white, and had a VIN ending in XXXXXXXXXXXXX7890. The other of these Suburbans was black, and had a VIN ending in XXXXXXXXXXXXX4105. The base price for each of these two Suburbans, which DOS paid to acquire these vehicles, was $48,200, for a total of $96,400.

l. The Defendant directed these two 2013 Suburbans to Ratcliffe for Ratcliffe to sell as with other prior stolen Suburbans.

m. The Defendant was not able to provide Ratcliffe with paperwork necessary to title these two Suburbans, however, and Ratcliffe and Person A kept them at their home, and drove the black Suburban with their dealership license plate as their personal vehicle.

11. As a result of the schemes described above, the Defendant willingly and knowingly obtained, or intended to obtain, by theft and fraudulent means, property belonging to the United States and DOS of a value totaling at least $512,420.

**(Conspiracy to commit Theft of Government Property and Wire Fraud, in violation of Title 18, United States Code, Sections 371)**

## FORFEITURE ALLEGATION

12. Upon conviction of the offense alleged in Count One, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the Defendant in the amount of $53,000.

13. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the Defendant shall forfeit to the United States any other property of the Defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

JESSIE K. LIU
United States Attorney
Bar No. 472845

By: _____
JOHN MARSTON
Bar No. DC - 493012
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., Room 5239
Washington, DC 20530
202-252-6886